```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                         DISTRICT OF VERMONT

GLENN MYER,                           :
                                      :
     Plaintiff,                       :
                                      :
          v.                          :   Case No. 2:06-cv-229
                                      :
ROBERT BACKUS, ESQUIRE, CARL          :
PACKER, LARRY NOVINS, KEITH           :
RUBNICK, EMMA PUDUCH, JEFF            :
FIRLICK, STEVEN VINCENT, and          :
JULIA EASTON, individually and        :
in their official capacity,           :
                                      :
     Defendants.                      :
```

MEMORANDUM and ORDER

Plaintiff Glenn Myer, a pharmacist, has sued members of Vermont's Board of Pharmacy, its legal counsel, and an attorney and investigator for the Vermont Secretary of State's Office of Professional Regulation for their involvement in the suspension of his license.  All Defendants have moved to dismiss his Verified Complaint in its entirety.  For the reasons that follow the motion (Doc. 15) is **granted**.

I.   **Statutory and Regulatory Background**

The state of Vermont controls and regulates the practice of pharmacy "to promote, preserve and protect the public health, safety and welfare."  Vt. Stat. Ann. tit. 26, § 2021 (2006).  A Board of Pharmacy ("Board"), consisting of five licensed pharmacists and two members of the public, is appointed by the governor to supervise the practice of pharmacy, including the

suspension, revocation or restriction of licenses to engage in the practice of pharmacy.  *Id.* §§ 2031, 2032(b)(2).  The Board is authorized to refuse to issue or renew, or may suspend, revoke or restrict a license for unprofessional conduct as defined by its rules and regulations.  *Id.* § 2051(1).  Unprofessional conduct is defined in Part I, Section 1 of the Board of Pharmacy Administrative Rules, adopted August 15, 2003.  *See* http://vtprofessionals.org/opr1/pharmacists/forms/rxrules.pdf; *see also* Vt. Stat. Ann. tit. 3, § 129a (2003 & Supp. 2006).

    The Board is attached to the Office of Professional Regulation ("OPR") within the office of the Secretary of State for Vermont.  Id. § 122(15).  When the Board receives a complaint from any source, it may assign one or more members of the Board to investigate.  Board members may have the assistance of an investigator, and an attorney assigned by OPR is responsible for prosecuting disciplinary and licensing actions before the Board.  *Id.* § 129(b), (c).  Any Board member who participates in the investigation of a complaint may not sit in adjudication of the case.  *Id.* § 129(c).  The Board may appoint a hearing officer to conduct a hearing before the Board, and report findings of fact and conclusions of law to the Board.  *Id.* § 129(f).  The Board may accept, reject or modify the findings and conclusions of the hearing officer, and renders judgment on the findings.  *Id.*

    Except in a case where the public health, safety or welfare

demands emergency action, no license may be suspended or revoked unless the licensee receives notice by mail of the facts or conduct which give rise to the action and is given an opportunity to respond.  *Id.* § 814(c).  Such a hearing is governed generally by the Vermont Rules of Evidence.  *Id.* § 810.  In the case of an emergency, summary suspension of a license may be ordered pending promptly scheduled proceedings for suspension or revocation.  *Id.*

Parties receive notice of their right to appeal final decisions of the Board.  *Id.* § 129(d).  A Board decision is appealed first to an OPR appellate officer.  That officer is empowered to hear constitutional and statutory challenges, as well as challenges to procedure, errors of law and the weight of the evidence.  *Id.* § 130a(a), (b).  An unsatisfactory decision by the appellate officer may be appealed to the Superior Court of Washington County.  *Id.* § 130a(c).  The Superior Court's decision may be appealed to the Vermont Supreme Court.  Vt. Stat. Ann. tit. 4, § 2(a) (2005).

**II.  Factual Background**

The following facts, taken from Myer's verified complaint and the records of the Vermont Secretary of State, Office of Professional Regulation ("OPR") are essentially undisputed.  Myer has been a licensed pharmacist since 1983.  He was licensed in the state of Vermont as of January, 2005, when he opened a pharmacy in Stowe, Vermont.  He referred to himself as Dr. Glenn

Myer, Clinical Pharmacist.

In May 2005, the State, through the OPR's Board of Pharmacy, sought summary suspension of Myer's license for unprofessional conduct, alleging that Myer had distributed Oxycontin and other drugs without a prescription; that he represented himself to the public as Dr. Myer without having a license or degree entitling him to use the term; and that he removed medications from the residence of a customer who had recently died.  The Board scheduled a hearing on the charge on June 2, 2006.

When Myer did not appear at the hearing, the Board concluded that he had been given notice of the hearing at the address Myer had supplied the Board.  Nevertheless, the prosecuting attorney had Myer called at his pharmacy and informed of the hearing in progress.  Myer arrived at the hearing and protested his lack of notice, the receipt of hearsay evidence, and his inability to prepare an adequate defense to the charges.  He participated in the hearing from that point forward.  The Board concluded that his testimony on several points was not credible, and that the public health, safety and welfare required the emergency action of summarily suspending his license.  Myer's pharmacy was closed on June 3, 2005.

In August 2005[1] the Board conducted a three-day hearing to consider the merits of several claims of unprofessional conduct in addition to the charges that had resulted in his summary suspension.  In a written decision, the Board concluded that there was insufficient credible evidence to support many of the specified charges.  It also found that Myer had engaged in unprofessional conduct in the following instances: he claimed to have a doctoral degree when he had none; he dispensed regulated drugs to a patient without a prescription; he made dispensing errors; he employed three individuals to perform tasks which can only be performed by registered pharmacy technicians without assuring that they were registered; and he failed to disclose a misdemeanor conviction from Pennsylvania on his license application.  The Board imposed a one-year suspension of Myer's license, retroactive to the date of the summary suspension.  The Board also required Myer to meet certain education requirements, and to work under the supervision of another licensed pharmacist for his first year of practice after reinstatement.

Myer appealed both the summary suspension order and the Board's final decision.  Both decisions were ultimately affirmed by the OPR's appellate officer.  Myer appealed these rulings to

---

[1] The parties refer to this hearing as having taken place in August 2006; however, the affidavit of the docket clerk of the Office of Professional Regulation indicates that the hearing took place in 2005.  (Doc. 15, Att. 1 & Ex. F.)

the state Superior Court of Washington County, Vermont.  Myer's appeal of the Board's final decision was affirmed by the Superior Court; the appeal of the summary suspension remains pending. Myer appealed the decision of the Washington County Superior Court to the Vermont Supreme Court, which affirmed the Superior Court order in a summary order on August 8, 2007.  *Myer v. Office of Prof'l Regulation*, No. 52-1-06 Wncv (Vt. Aug. 8, 2007) (entry order).

    Myer's suit invokes this Court's jurisdiction based on 42 U.S.C. §§ 1983, and seeks declaratory, injunctive and monetary relief in the form of actual and punitive damages.  Count I seeks a declaration that Vermont's statute and rules pertaining to discipline for unprofessional conduct are void for vagueness. Count II alleges violations of due process and equal protection in the suspension of his license.  Count III alleges libel and slander for charging that he was unprofessional and a threat to public safety and welfare.  Count IV alleges intentional interference with business relations by suspending his license and closing his pharmacy.  Myer also seeks an injunction restoring his license and an unrestricted right to operate a pharmacy.  His claims are brought against the prosecuting attorney, the OPR investigator, the presiding officer and Board counsel, and five members of the Board, in their individual and official capacities.

The Defendants seek dismissal based on the doctrine of *Younger* abstention, on issue and claim preclusion, on sovereign, absolute and qualified immunity, and for failure to state a claim upon which relief can be granted. The Court accepts as true the factual allegations of the verified complaint, and draws all reasonable inferences in Myer's favor. It takes judicial notice of matters outside the complaint, specifically OPR records pertaining to Myer's proceedings and state Superior and Supreme Court docket sheets and decisions in considering whether to abstain from taking jurisdiction over Myer's claim for injunctive relief. *See Mitchell v. Fishbein*, 377 F.3d 157, 160 (2d Cir. 2004).

**II. Discussion**

    **A.   *Younger* Abstention**

In *Younger v. Harris*, 401 U.S. 37 (1971), a case involving a state criminal prosecution, the Supreme Court articulated "a national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." 401 U.S. at 41. The *Younger* abstention doctrine has been extended to state administrative proceedings. *See Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). In *Middlesex*, the Supreme Court set forth a three-part test for determining whether the policies of comity and federalism underlying *Younger* should apply to a state

administrative proceeding: 1) is it an ongoing state judicial proceeding; 2) does the proceeding implicate important state interests; and 3) is there an adequate opportunity in the state proceeding to raise constitutional challenges.  457 U.S. at 432.

When Myer filed his complaint in federal court, the state administrative process was ongoing and judicial in nature, a fact that Myer does not contest.  He also appears to concede that proceedings to discipline pharmacists for unprofessional conduct implicate important state interests.  He contends that the state judicial proceedings do not afford him an adequate opportunity to litigate his constitutional claims.  He fails, however, to specify how or why he is precluded from raising due process, equal protection or vagueness claims in the state proceedings.  He suggests that a state court adjudication will not be timely, and that the Board proceeded in bad faith.  Myer bears the burden of establishing the inadequacy of state proceedings to address his constitutional defenses, *see Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 77 (2d Cir. 2003), a burden he manifestly does not sustain with vague allegations of delay and bad faith.

To be sure, bad faith prosecution is an exception to the policy of abstaining from enjoining state proceedings.  *See Younger*, 401 U.S. at 53.  But bad faith prosecution is defined as

one that has been brought without a reasonable expectation of obtaining a valid conviction.  *See Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975) ("'bad faith' in this contest generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction").  Although Myer's complaint is replete with allegations that the investigation was prompted by various individuals who bore him a grudge, and that the investigator and prosecutor became unreasonably biased against him as a result of interviewing these individuals, the complaint contains no hint that the prosecutor had no reasonable expectation of proving his case.  His judgment is confirmed by the fact that the Board found--and the OPR appellate officer, the Washington Superior Court and the Vermont Supreme Court affirmed--that Myer had engaged in unprofessional conduct.

 The only remaining argument against *Younger* abstention is one that was not available to Myer when the Defendants filed their motion to dismiss: that with the exception of the appeal of the summary suspension, there is no longer an ongoing state proceeding.  Nevertheless, a portion of the state proceeding is in fact ongoing.  *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 374 (1989) (Rehnquist, J., concurring) ("proceedings should be regarded as 'ongoing' for the purposes of *Younger* abstention until state appellate review is completed" (citing *Ohio Civil Rights Comm'n v. Dayton Christian*

*Sch., Inc.*, 477 U.S. 619, 629 (1986))); *see also Bettencourt v. Bd. of Registration in Med. of Commonwealth of Mass.*, 904 F.2d 772, 777 (1st Cir. 1990) ("In determining whether federal proceedings would interfere with *ongoing* state proceedings, the proper point of reference is the date plaintiff filed his federal complaint."). The Court will not entertain an action to enjoin the proceedings of the Board of Pharmacy against Myer. Myer's constitutional claims for equitable relief are dismissed pursuant to the *Younger* doctrine of abstention.

### B. Federal Damages Claims

Myer also seeks monetary damages from Defendants for misconduct of the investigation, denial of a fair hearing at the summary suspension proceeding, and printing false reports about his unprofessional conduct. Myer concedes that the Defendants were acting as an arm of the state. To the extent that Myer has brought suit against Defendants in their official capacity, the claims are barred by the doctrine of sovereign immunity. "[S]tate officials cannot be sued in their official capacities for retrospective relief under § 1983." *Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005).

State officials subjected to a § 1983 suit in their individual capacities may be entitled to absolute or qualified immunity for their actions. *Bernard v. County of Suffolk*, 356

F.3d 495, 502 (2d Cir. 2004).  To determine whether a state official is entitled to absolute immunity, a court looks at "the specific action for which that person seeks immunity." *Mangiafico v. Blumenthal*, 471 F.3d 391, 394 (2d Cir. 2006); *see also Stump v. Sparkman*, 435 U.S. 349, 362 (1978) (factors determining whether an act "is a 'judicial' one relate to the nature of the act itself . . . and to the expectations of the parties").

Defendant Backus was the OPR prosecuting attorney.  According to Myer's complaint, Backus investigated the complaints, became unreasonably biased, made a request for summary suspension, called Myer a liar at the summary suspension hearing, and prosecuted a more extensive specification of charges at the August 2005 hearing.  Myer believes that Backus may have written the Board's decision for it prior to the summary suspension hearing.

Defendant Packer was the OPR investigator.  According to the complaint, Packer assisted Backus in his investigation, and likewise became unreasonably biased.

Defendant Novins acted as hearing officer and legal counsel to the Board.  Myer alleges "on information and belief" that Novins was part of the biased investigation, and may have written the Board's decision before the summary suspension hearing.

The remaining defendants, members of the Board, are not alleged to have engaged in any individual conduct other than that they were part of the biased investigation "on information and belief."  The Defendants in general are alleged to have conducted a grossly negligent, malicious and incompetent investigation, to have failed to give Myer actual notice of the summary suspension hearing, to have summarily suspended his license and closed his pharmacy, issued a press release concerning the suspension, contacted the United States Drug Enforcement Agency to remove drugs and records from Myer's establishment, and contacted the Medicaid Office at the office of the Vermont Attorney General.

In connection with the full hearing, the Board in general is alleged to have imposed unduly severe sanctions that were biased, arbitrary and capricious.  All in all the Defendants in general are alleged to have conducted a grossly negligent, malicious and biased initial investigation, issued an unlawful summary suspension, and imposed arbitrary and capricious sanctions.

Agency officials who participate in formal adjudicatory proceedings are absolutely immune from suits for damages for their actions.  *Butz v. Economou*, 438 U.S. 478, 514 (1978); *see also Watts v. Burkhart*, 978 F.2d 269, 274 (6th Cir. 1992) (en banc) ("public policy requires absolute immunity for officials performing quasi-prosecutorial or quasi-judicial functions, at least where protections such as those provided by the

Administrative Procedure Act are in place"); *Bettencourt*, 904 F.2d at 784 ("absolute immunity bars plaintiff's claims for damages against the [medical] Board members acting in their 'quasi-judicial' capacities").

The proceedings of the Board, even at the summary stage, were functionally comparable to that of a court, with considerable procedural protections in place.  Myer leveled a single conclusory allegation that the hearing officer and Board members were part of a biased investigation, without one fact or inference that could support the claim.  Board members are barred by statute from involvement in the investigation.  Vt. Stat. Ann. tit. 3, § 129(c).  "'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.'" *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). For their participation in the summary and full hearings, Defendant Novins as the hearing examiner and the other Board members are protected from a § 1983 damages suit by absolute immunity.

Defendant Backus, as the OPR prosecuting attorney, is likewise absolutely immune from a § 1983 damages suit for the initiation and prosecution of the charges against Myer.  *See Butz*, 438 U.S. at 515; *Watts*, 978 F.2d at 274.

Defendants Backus and Packer are also alleged to have acted as investigators rather than in a quasi-judicial function, for which activity absolute immunity is unavailable.  Officials performing discretionary functions may be entitled to qualified immunity, however, if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Those engaged in investigative functions may be entitled to qualified as opposed to absolute immunity, although the line between investigation and advocacy before a judicial or quasi-judicial body may be difficult to draw.  *See Bernard*, 356 F.3d at 502-03, 506.

A claim of qualified immunity involves the initial inquiry whether the conduct violated a federal right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *accord Velez v. Levy*, 401 F.3d 75, 85 (2d Cir. 2005).  Then, if the conduct violated such a right, was the right clearly established?  *Id.*  In the context of a motion to dismiss, the Court "review[s] the facts in the light most favorable to the plaintiff, and draw[s] all permissible inferences in the plaintiff's favor."  *Id.*

With respect to the investigation, Myer alleges that a false affidavit was sent to Backus and Packer, swearing that Myer had given a tennis professional Oxycontin during a tennis match. Other information presumably disparaging to Myer was also

provided by individuals associated with Topnotch Resort and Spa, with whom he had several running disputes.  The Village of Stowe Police Department reported to Backus and Packer that Myer had secured and destroyed drugs belonging to one of Myer's customers who had recently died.  Backus and Packer also learned that Myer was calling himself "Doctor," and had been charged in another state with harassment.  According to the complaint, this caused Backus and Packer to develop an unreasonable bias against Myer.

Myer also alleges that the investigation was grossly negligent, malicious and incompetent, because the investigators didn't follow up the Oxycontin allegation, and failed to obtain the information that the decedent's son had given Myer permission to destroy the drugs.  Finally, he alleges that after the summary suspension Backus and Packer continued their investigation, and produced an additional twenty-nine charges.  He generally avers that these and the other actions described in the complaint violated his substantive and procedural due process rights.

Taken as a whole, and drawing every inference in Myer's favor, Backus and Packer's investigative activities do not amount to a violation of substantive or procedural due process or equal protection, much less one that is clearly established.  There is no suggestion that the investigators were aware that the sworn affidavit was untrue, and no constitutional requirement to seek out other witnesses when the supposed recipient of the Oxycontin

had sworn he'd received it.  If removing and destroying drugs from a customer's residence supported a charge of unprofessional conduct, the opinion of the customer's son was irrelevant.  That the Board ultimately determined that the Oxycontin charge lacked credibility, and removing the drugs did not violate any law, does not render the investigation constitutionally unsound.  And continuing the investigation after Myer's summary suspension did not violate Myer's federal rights, given the Board's obligation to proceed with a full hearing on the merits.

The complaint simply fails to allege that Backus or Packer violated a clearly established federal right.  They are entitled to the protection of qualified immunity from the federal damages claims.

### C.   State Law Claims

Myer has also brought state law claims of libel and slander and tortious interference with business relations.  Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise jurisdiction over a supplemental state law claim if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  The Court has dismissed Myer's federal equitable claims against all Defendants, and his federal damages claims against all Defendants in their official capacities and in their individual capacities based on absolute or qualified immunity.  Accordingly, the Court declines to exercise

supplemental jurisdiction over Myer's state law claims.  Given this disposition, it is unnecessary to address Defendants' arguments for dismissal based on issue or claim preclusion or failure to state a claim upon which relief can be granted.

    Dated at Burlington, Vermont this 28th day of September, 2007.

                                                          /s/ William K. Sessions III
                                                          William K. Sessions III
                                                          Chief Judge, U.S. District Court